[Cite as *T.C. v. R.B.C.*, 2025-Ohio-1544.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

T.C.,                                                        :

       Plaintiff-Appellant,              :

                                         No. 114108

      v.                                               :

R.B.C.,                                                     :

       Defendant-Appellee.              :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 1, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-21-387669

---

### *Appearances:*

Costanzo & Lazzaro, P.L.L., and Raymond J. Costanzo, *for appellant*.

Rosenthal │ Lane L.L.C., Scott S. Rosenthal, and Alarra S. Jordan, *for appellee*.

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Plaintiff-appellant, T.C. (hereinafter "Wife"), appeals the trial court's June 12, 2024 judgment entry of divorce. Wife contends that the trial court erred

when it 1) adopted the magistrate's finding that the marital residence had a fair market value of $275,000 as of the date of the marriage; 2) failed to preclude defendant-appellee, R.B.C. (hereinafter "Husband"), under the doctrine of res judicata (issue preclusion), from challenging the Cuyahoga County Auditor's assessment of the value of the marital residence as of the date of the marriage; and 3) adopted the magistrate's decision with respect to allocation of debt responsibility. After a thorough review of the record, we affirm the judgment of the trial court.

## I. Procedural History and Relevant Facts

{¶ 2} Wife and Husband were married on June 25, 2005. Two children were born of the marriage. Wife filed a complaint for divorce on November 5, 2021. On the same day, the trial court ordered the parties to comply with Cuyahoga CP, Dom.Rel.Div., Loc.R. 14 and file a financial disclosure statement. The trial court also issued a mutual restraining order pursuant to Dom.Rel.Div., Loc.R. 24. Relevant to this appeal, the court enjoined both parties from incurring debt on existing lines of credit. On November 8, 2021, Wife filed a motion for temporary support. Husband filed an answer to the complaint and counterclaim on December 8, 2021. On May 26, 2022, the magistrate issued an order for temporary support ordering Husband to pay a monthly total to Wife of $408.

{¶ 3} A trial was conducted before the magistrate over a period of four days: August 1, 2023; September 27, 2023; September 28, 2023; and October 12, 2023. Because Wife raises issues regarding the trial court's determinations concerning

marital property, credit card debt, and the division thereof, we will briefly review the testimony germane to those issues.

{¶ 4} Husband testified that in 2001, four years prior to the date of the marriage, he purchased a house located on Vineland Road in Bay Village, OH ("Vineland Road property") for approximately $114,000. It is undisputed that on the date of the marriage, the house was under renovation and construction. The parties dispute the value of the Vineland Road property and the extent to which construction of the house was complete as of the marriage date. Timothy Weber ("Weber") was called to testify as an expert on behalf of Husband with respect to the retrospective value of the Vineland Road property on the date of the marriage. Weber testified that he had been a residential real estate appraiser for 36 years. He was certified by the State of Ohio in 1991. Weber concluded that as of July 1, 2005, the house was 70 percent complete and that the value of the Vineland Road property was $275,000.

{¶ 5} Wife presented county auditor reports concerning the state of the residence on the Vineland Road property as of January 2005 and January 2006. These reports designated the residence 30 percent and 40 percent complete on their respective dates.

{¶ 6} Evidence was also presented concerning credit card debt. The parties stipulated that Husband had the following credit card accounts in his name: a GM credit card and a Chase Bank business credit card. Wife had the following accounts in her name: Prime (#9709), Amazon (#3410), Discover (#2326), Kohls (#3642),

and Target (#9519). Husband and Wife each presented evidence with respect to the debt incurred on these accounts.

{¶ 7} On January 25, 2024, the magistrate issued its decision with respect to the complaint. The magistrate granted the complaint for divorce and made the following findings relevant to this appeal. The magistrate adopted Weber's valuation of the Vineland Road property of $275,000 as of the date of the marriage. The magistrate also ordered each party responsible for their own credit card debts incurred in their own names.

{¶ 8} Wife filed objections to the magistrate's decision. Relevant to this appeal, Wife objected to the magistrate's valuation of the Vineland Road property as of the date of the marriage; the magistrate's allocation of debt; and the magistrate's failure to preclude Husband from challenging the valuation of the Vineland Road property as of the date of the marriage under the doctrine of res judicata. The trial court overruled Wife's objections and adopted the magistrate's decision in relevant part. Wife appeals the trial court's judgment of divorce.

## II. Law and Argument

{¶ 9} Wife raises three assignments of error. They read the following:

1. The trial court erred and abused its discretion in adopting the magistrate's finding that the marital home had a fair market value of $275,000 on the date of the parties' marriage.

2. The trial court erred and abused its discretion in adopting the magistrate's decision refusing to find that Appellee was collaterally estopped from arguing against the 2006 Board of Revision decision.

3. The trial court erred and abused its discretion in adopting the magistrate's decision making Appellant responsible for the entire

marital debt totaling $29,411.18 as of the date she moved out of the marital home on July 1, 2022.

Assignments of error Nos. 1 and 3 each involve the trial court's adoption of the magistrate's findings concerning the division of assets. Accordingly, we review each assignment under a manifest weight standard of review to determine whether the valuation was supported by some competent, credible evidence and whether the trial court abused its discretion in adopting the magistrate's findings. Assignment of error No. 2 involves the applicability of res judicata (issue preclusion/collateral estoppel) to the instant case, which we review de novo. For ease of discussion, assignments of error Nos. 1 and 3 will be discussed together, followed by assignment of error No. 2.

## Assignments of Error Nos. 1 and 3

## A. Standard of Review

{¶ 10} Assignments of error Nos. 1 and 3 concern whether the trial court erred by rejecting Wife's objections and adopting the magistrate's determinations concerning division of assets. Particularly, Wife challenges the trial court's adoption of the magistrate's valuation of the marital residence at the time of marriage and the allocation of debt amongst the parties. "A trial court's decision to adopt a magistrate's decision is reviewed for an abuse of discretion." *Flemco, LLC v. 12307 St. Clair, Ltd.,* 2018-Ohio-588, ¶ 15 (8th Dist.), citing *Kapadia v. Kapadia,* 2011-Ohio-2255, ¶ 7 (8th Dist.). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,*

5 Ohio St.3d 217, 219 (1983). We must be mindful that when applying the abuse-of-discretion standard "we should not substitute our judgment for that of the trial court." *Mills v. Mills,* 2025-Ohio-452, ¶ 28 (8th Dist.), citing *Martin v. Martin,* 18 Ohio St.3d 292, 295 (1985).

## B. Analysis

### 1. The valuation of the Vineland Road property at the time of the marriage was supported by competent, credible evidence

{¶ 11} In the first assigned error for review, Wife challenges the trial court's adoption of the magistrate's $275,000 valuation of the marital residence as of the date of the marriage, located on Vineland Road in Bay Village, OH.

{¶ 12} Wife claims that the appraisal introduced by Husband's expert is flawed because the expert's valuation was premised on the assumption that the renovations of the premises were 70 percent complete at the time of the marriage, rather than 35 percent as set forth in Cuyahoga County Auditor reports issued during that time period.

{¶ 13} We begin by recognizing that under Civ.R. 53(D)(4)(d), a trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." "The trial court must conduct a de novo review of the facts and an independent analysis of the issues to reach its own conclusions about the issues in the case." *Kapadia,* 2011-Ohio-2255, at ¶ 9 (8th Dist.).

{¶ 14} "In a divorce proceeding, a trial court must divide the marital property of the parties equitably." *Kapadia* at ¶ 24, citing R.C. 3105.171(B). In order to do so, the trial court "must place a value on each contested item of property." *Id.* at ¶ 24, citing *Pawlowski v. Pawlowski,* 83 Ohio App.3d 794 (10th Dist. 1992). "Valuing property involves factual inquiries, requiring an appellate court to apply a manifest weight of evidence standard of review." *Id.* This standard of review is highly deferential. *A.Y. v. E.Y.,* 2023-Ohio-1671, ¶ 18 (8th Dist.). "An appellate court will not reverse a trial court's valuation if it is supported by some competent, credible evidence." *Kapadia* at ¶ 24, citing *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77 (1984).

{¶ 15} Husband called Timothy Weber to testify as an expert on his behalf regarding the value of the Vineland Road property as of the date of the marriage. Weber testified that he has been a residential real estate appraiser in Ohio for 36 years. He was certified by the State of Ohio in 1991. Weber determined that the value of the property on July 1, 2005, was $275,000. As of the date of the marriage, the renovations to the house on the property had yet to be completed. Weber testified that the house was 70 percent complete. Had the renovations been completed, Weber testified that the valuation of the property would have been $100,000 greater.

{¶ 16} Weber explained his process for arriving at his valuation. He testified he utilized the sales comparison approach in this case. Weber reviewed multiple listing services and county record data services of similarly sized homes dating back

to one year prior to the date of the marriage in order to determine a market trend. He also interviewed the homeowner, Husband, with respect to the state of the home at the time, concerning its rehabilitation and construction. Weber also took into consideration the reputation of the area at the time.

{¶ 17} Weber testified that he had reviewed the county auditor reports while conducting his appraisal analysis. In coming to his conclusion, Weber stated that he utilized the information he received from Husband, rather than the information contained in the auditor reports. In doing so, Weber testified that when conducting these types of retrospective appraisals, he makes the "extraordinary assumption" that a person present at the premises at the time is providing correct information. Weber explained that Husband was able to provide him "primary data" as a person who was present on the property in July 2005, the effective date of the appraisal. He admitted the "primary data" the Husband provided consisted only of the Husband's recollection of the construction in 2005 and the Husband could not locate his file with documentation regarding the status of the construction in 2005. Weber also explained that auditor reports, on the other hand, are a temporary third-party source, and that if he called the auditor's office to ask about the completion percentage set forth in the report, he may not be speaking to the person that actually did the inspection. As an appraiser, Weber testified that he wants to speak to "a primary person that was there at the time." Weber also noted that based on his experience, "county auditors are never on point with what a house would sell for."

{¶ 18} Husband also testified that the home was 70 percent complete on the date of the marriage. Husband testified that as of the date of the marriage the home had a furnace and heating; the frame was up; and that the exterior of the house looked like the house was complete. The house had a roof, windows, bricks, and a wraparound back porch. The driveway and the front porch had not been completed though.

{¶ 19} With respect to the interior of the home, Husband stated that the rough-in electrical, rough-in framing for the interior of the house; and rough-in plumbing were complete. He explained that even though these were complete on the date of marriage, he did not call for the city to inspect the house until he was ready to move forward with the project. As a result, he explained that even though an inspection may have been conducted by the city on a certain date after the marriage, the work had been completed earlier.

{¶ 20} Wife disputes Weber's appraisal. She did not call an expert to dispute Weber's valuation. Rather, Wife presented county auditor reports concerning the extent of the construction as of January 2005 and January 2006. These reports designated the residence 30 percent and 40 percent complete on their respective dates. The individuals that prepared these reports did not testify at trial. Wife testified that she recalls that the siding, porch, and framing inside the house were not complete in 2005, and she believes the residence was 30 percent complete on the date of marriage.

{¶ 21} The magistrate determined Weber's testimony and his report credible. The trial court was free to accept Weber's appraisal of the Vineland Road property as of July 1, 2005, as well as Husband's sworn testimony concerning the extent of the renovations to the premises at the time. *See Harding v. Harding,* 2013-Ohio-4660, ¶ 43–44 (5th Dist.) (holding that when the trier of fact is presented with an expert's valuation and an auditor's tax evaluation, the trier of fact is free to accept the valuation of the expert). Because the trial court's determination was based on competent, credible evidence, we cannot say that the trial court abused its discretion by adopting the magistrate's value of the Vineland Road property at $275,000 at the time of the marriage. Accordingly, Wife's first assignment of error is overruled.

**2. The trial court did not abuse its discretion ordering both parties responsible for credit card debt incurred in their own names**

{¶ 22} In the third assigned error for review, Wife challenges the trial court's adoption of the magistrate's determination concerning the allocation of credit card debt amongst the parties. Particularly, Wife argues that the trial court 1) improperly placed the burden on her to demonstrate that the credit card debt was marital property, and 2) failed to make a finding that an equal division of property would be inequitable.

### a. The trial court did not place the burden of proof on Wife to prove that the credit card debt was marital property

{¶ 23} First, Wife argues that the trial court erred by placing the burden on her to demonstrate that her credit card debt was marital debt. When a trial court divides marital property, it must also consider the marital debt of the parties. *Chattree v. Chattree,* 2014-Ohio-489, ¶ 8 (8th Dist.), citing *Kehoe v. Kehoe,* 2012-Ohio-3357, ¶ 14 (8th Dist.) "[W]e review the trial court's division of debt under an abuse of discretion standard." *Trolli v. Trolli,* 2015-Ohio-4487, ¶ 32 (8th Dist.), citing *Banjoko v. Banjoko,* 2013-Ohio-2566, ¶ 18 (2d Dist.).

{¶ 24} Marital debt is "any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." *Victor v. Kaplan,* 2020-Ohio-3116, ¶ 105 (8th Dist.), citing *Stratton v. Stratton,* 2019-Ohio-3279, ¶ 41 (8th Dist.). "Debt that is not for the joint benefit of the parties is considered nonmarital and 'equity generally requires that the burden of nonmarital debt be placed upon the party responsible for them.'" *Cross v. Cross,* 2015-Ohio-5255, ¶ 30 (8th Dist.), quoting *Minges v. Minges,* 1988 Ohio App. LEXIS 660, *4 (12th Dist. Feb. 29, 1988). As a result, "debts incurred during the marriage are presumed to be marital unless proven otherwise." *Kaplan* at ¶ 15, citing *Turner v. Davis-Turner,* 2018-Ohio-2194, ¶ 12 (8th Dist.) "Therefore, the party seeking to have the debt classified as a separate debt bears the burden of proving, by a preponderance of the evidence, that the debt was the separate obligation of the other spouse or was not

for a valid marital purpose." *A.E. v. J.E.,* 2024-Ohio-1785, ¶ 77 (8th Dist.), citing *Rossi v. Rossi,* 2014-Ohio-1832, ¶ 62 (8th Dist.)

{¶ 25} There is nothing in the record to support Wife's claim that the trial court improperly placed the burden on her to demonstrate the debt incurred was marital debt. Rather, the trial court's judgment entry specifically classified and treated the debt as marital debt. The judgment entry provides under the subheading "MARITAL DEBT," "[Wife] and [Husband] testified that all of the marital debt is on credit cards. [Wife] testified to significant credit debt that was acquired after the filing of the Complaint for Divorce. [Wife] admitted that the majority of the credit card debt was incurred after she lost her employment as a teacher in March, 2023, after the Complaint for Divorce was filed and the parties were separated. [Husband] also testified that significant credit card debt was paid off during the marriage prior to the filing of the Complaint for Divorce." Exhibits reflecting the credit card debt were admitted into evidence. Per the trial court's judgment entry, Wife had $27,016.96 in credit card debt and Husband had $15,596.32. Since the court did not classify the debt as separate, Wife's claim is without merit.

{¶ 26} With respect to the allocation of the marital debt, the trial court ordered that "each party shall be responsible for their own credit card debts incurred in their own names." The trial court further held that the "division of property, though not equal, is equitable for the following reasons: Plaintiff's

continuing incurred debt during the ongoing proceedings." The trial court's division of debt is supported by competent, credible evidence.

{¶ 27} Wife's testimony reflects that she acquired significant credit card debt after filing the complaint for divorce. Wife's testimony also reflects that she used $28,000 of tax returns deposited into her savings account to partially pay her credit card debt as well as other bills, including root canals, at $1,600 apiece. The trial court concluded that "[t]herefore, this Court finds that it is equitable for [Wife] to be responsible for the credit card debts in her name."

{¶ 28} For the foregoing reasons, the trial court did not abuse its discretion with respect to the allocation of marital debt. Wife's third assigned error for review is overruled.[1]

## Assignment of Error No. 2

{¶ 29} In the second assigned error for review, Wife claims that Husband was barred by the doctrine of res judicata (issue preclusion/collateral estoppel)

---

[1]We note that within Wife's third assignment of error, she claims, without elaboration, that the trial court failed to consider the factors enumerated in R.C. 3105.171(F) or make written findings per R.C. 3105.171(G). However, App.R. 16(A)(7) requires an appellant to include in their brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." "Appellate courts are not advocates. Therefore, [we] 'will not search the record in order to make arguments on appellant's behalf.'" *Taylor-Stevens v. Rite Aid of Ohio,* 2018-Ohio-4714, ¶ 121 (8th Dist.), quoting *Helman v. EPL Prolong, Inc.,* 139 Ohio App.3d 231, 240 (7th Dist.). Wife's brief fails to support these extraneous statements with any arguments, does not specifically direct this court to which factors in particular the trial court failed to address, nor does she direct this court to any case law or parts in the record in support of her position. Thus, we decline to address the extraneous issues raised in Wife's third assignment of error.

from challenging the valuation of the marital home as of the date of the marriage since the Cuyahoga County Board of Revision ("BOR") valued the home at $85,000 as of January 1, 2006. In support of this claim, Wife presented a valuation from the BOR with a journal date of 9/28/2007, introduced as Plaintiff's exhibit No. 25. We find the doctrine of res judicata is inapplicable.

## A. Standard of Review

{¶ 30} "'The issue of whether res judicata applies in a particular situation is a question of law that is reviewed under a de novo standard.'" *Kobal v. Kobal,* 2022-Ohio-812, ¶ 8 (8th Dist.), quoting *Hempstead v. Cleveland Bd. of Edn.,* 2008-Ohio-5350, ¶ 6 (8th Dist.). "A de novo standard of review affords no deference to the trial court's decision, and we independently review the record to determine whether res judicata applies." *Hempstead* at ¶ 16, citing *Gilchrist v. Gonsor,* 2007-Ohio-3903, ¶ 16 (8th Dist.).

## B. The Doctrine of Res Judicata (Issue Preclusion) Did Not Preclude Husband From Asserting That the Value of the Vineland Road Property Was $275,000 at the Time of the Marriage

### 1. Applicable law

{¶ 31} Issue preclusion, also known as collateral estoppel, is incorporated under the doctrine commonly known as res judicata. *Usha Pillai IRA LLC v. Roseman,* 2023-Ohio-3480, ¶ 17 (8th Dist.). Pursuant to the doctrine of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transactions or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.,* 73 Ohio St.3d

379 (1995), syllabus. Issue preclusion "prevents parties from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit." *AJZ's Hauling, L.L.C. v. Trunorth Warranty Programs of N. Am.,* 2023-Ohio-3097, ¶ 16, citing *Thompson v. Wing,* 70 Ohio St.3d 176, 183 (1994).

{¶ 32} The Ohio Supreme Court has recently stated that "[i]ssue preclusion applies 'when the fact or issue (1) was actually and directly litigated in the prior action[ and] (2) was passed upon and determined by a court of competent jurisdiction[ ] and (3) when the party against whom collateral estoppel is asserted was a party in privity with the party to the prior action.'" *AJZ's Hauling at* ¶ 16, quoting *Thompson* at 183. Res judicata is an affirmative defense. *Jefferson v. Bunting,* 2014-Ohio-3074, ¶ 10, citing Civ.R. 8(C). Our review in this case centers on the evidence presented by the Wife to establish the affirmative defense of res judicata.

**2. Analysis**

{¶ 33} As set forth above, the issue in this case is whether issue preclusion applies to the value of the Vineland Road property when the parties were married in 2005. Specifically, Wife contends that Husband contested the value of the property with the BOR in 2006 and the BOR ultimately valued the property at $85,000 via a journal entry dated September 28, 2007. We have examined the evidence in the record and disagree that the documents and testimony contained in the record establishes that Wife met her burden that Husband "actually and

directly" litigated the 2005 value of the Vineland Road property and the 2005 value was determined "by a court of competent jurisdiction."

{¶ 34} In support of her issue-preclusion claim, Wife relies on what purports to be a BOR's valuation of the Vineland Road property at $85,000, journalized on September 28, 2007 (Plaintiff's exhibit No. 25, page 1 (*see* Appendix)). We begin our analysis by recognizing that "[r]es judicata may apply in quasi-judicial administrative hearings." *State ex rel. Haddox v. Indus. Comm. of Ohio,* 2013-Ohio-794, ¶ 32. "The Cuyahoga County Board of Revision is a quasi-judicial body charged with the responsibility of hearing complaints as to the valuation of real property within the county." *Musarra v. Cuyahoga Cty. Aud.,* 2012-Ohio-3967, ¶ 13 (8th Dist.). Thus, issues preclusion may apply to valuation issues litigated before the BOR.

{¶ 35} However, here, Wife failed to provide evidence that would establish a claim for res judicata and/or collateral estoppel with respect to the valuation of the Vineland Road property as of the date of the marriage. Page 1 of plaintiff's exhibit No. 25, on which Wife relies, is devoid of any indication that the Husband filed a complaint against the valuation of the Vineland Road property, whether a hearing was held or testimony provided regarding the complaint, whether the BOR rendered a decision regarding the value of the Vineland Road property as of the date of the marriage, or January 1, 2006, for that matter, or who issued the journal entry. Rather, the journal entry references a complaint number "200703270228," a "Journal Number" of "372D-07," and a "Journal Date" of September 28, 2007.

The document does not indicate what tax year was appealed and appears to have been issued more than two years after the date of the marriage. There is no indication that the value of the property as of the date of the marriage was actually and directly litigated before the BOR, determined by the BOR, or who each of the parties to the action were. Without more, the record fails to support Wife's res judicata (issue preclusion) claim.

{¶ 36} After a thorough review of the record, we find that the doctrine of res judicata (issue preclusion) is inapplicable. Accordingly, Wife's second assignment of error is overruled.

## III. Conclusion

{¶ 37} We affirm the judgment of the trial court. The trial court did not abuse its discretion by adopting the magistrate's value of the Vineland Road property at $275,000 at the time of the marriage, which was based on the appraisal of Husband's expert. Nor did the trial court abuse its discretion in allocating the credit card debt each party had incurred in their own name. Finally, we find that the doctrine of res judicata is inapplicable in this case. Therefore, Husband was not precluded from disputing the valuation of the Vineland Road property as of the date of the marriage.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
MARY J. BOYLE, J., CONCUR

APPENDIX

 

## Cuyahoga County BOR
### Complaint Processing System

|  Find Complaints |  Enter Complaint |  Fast Enter Complaints |  Reports |  Administrative Options |

VIEW DECISIONS

| Complaint Number: | 200703270228 | | Parcel Number: | 204-11-010 | Lead Parcel: | 204-11-010 |

**Administrative Review Decision**

| New Land Value: | | Land Value Inc/Dec: | |
| New Building Value: | | Building Value Inc/Dec: | |
| New Total Value: | | Total Value Inc/Dec: | |
| Journal Number: | | Journal Date: | |
| Misc. Decision: | | | |
| Cc. | | | |

**Decision / Market Values**

| New Land Value: | 47,100 | Land Value Inc/Dec: | 0 |
| New Building Value: | 37,900 | Building Value Inc/Dec: | -108,300 |
| New Total Value: | 85,000 | Total Value Inc/Dec: | -108,300 |
| Journal Number: | 372D-07 | Page Number: | |
| Journal Date: | 9/28/2007 | | |
| Case Law Decision: | | | |

Go Back

© Cuyahoga County
1219 Ontario Street
Cleveland, Ohio 44113


INFORMATION
SERVICES CENTER



PLAINTIFF'S
EXHIBIT
# 25

I certify that this document
is a true copy of the public record
held by the Board of Revision.

Signature: Ann Hoffmaster
Date: 7/18/ 2023